A05A1668. NORTH ATLANTA SCAN ASSOCIATES, INC. v. DEPARTMENT OF COMMUNITY HEALTH et al.

(627 SE2d 67)

ELLINGTON, Judge.

North Atlanta Scan Associates, Inc. ("NASA") filed a petition for judicial review of an administrative decision issued by the Georgia Department of Community Health. In that administrative decision, the Department determined that NASA's operation of its diagnostic imaging center without a certificate of need ("CON") violated the State Health Planning Act and ordered that NASA cease operations until it obtained a CON. The Superior Court of Fulton County affirmed the Department's decision, and we granted NASA's ensuing application for discretionary appeal. On appeal, NASA contends the Department lacked the authority to reverse an earlier administrative ruling in which the Department determined that the diagnostic imaging center did not require a CON and that the trial court accordingly erred in affirming the Department's decision. NASA further contends that the trial court erred in failing to require the Department to comply with notice requirements for revocation of a license and in allowing Georgia Alliance of Community Hospitals, Inc. and Diagnostic Imaging of Atlanta, LLC to intervene. For the following reasons, we affirm.

The Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq., provides for the judicial review of final agency decisions and authorizes the superior court to reverse or modify the agency decision only

> if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Affected by other error of law;
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> > (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

OCGA § 50-13-19 (h). "The [superior] court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Id. The subsection addressing the sufficiency of the evidence, OCGA § 50-13-19 (h) (5), "has been interpreted to preclude review if any evidence on the record substantiates the administrative agency's findings of fact and conclusions of law." (Citations and punctuation omitted.) *Professional Standards Comm. v. Alberson*, 273 Ga. App. 1, 4-5 (1) (614 SE2d 132) (2005). "Upon further discretionary appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citations and punctuation omitted.) Id. at 5 (1). "Our function is to determine whether the superior court has in its own final ruling committed an error of law." (Punctuation and footnote omitted.) *Ga. Dept. of Community Health v. Freels*, 258 Ga. App. 446, 446-447 (576 SE2d 2) (2002).

The record shows the following undisputed facts. NASA operates several full service diagnostic imaging centers in metropolitan Atlanta. NASA began providing diagnostic imaging services in December 1988, with its first center located at 4500 North Shallowford Road, Suite 100 ("the old location"). In 1991, the General Assembly amended the State Health Planning Act, OCGA § 31-6-1 et seq. ("the Act"), expanding the scope of required CON review of new health care projects. Ga. L. 1991, p. 1871. Via a letter from the Department's predecessor agency[1] dated January 28, 1992, NASA received a "grandfather exemption" from the new CON requirements for its existing diagnostic imaging center. See OCGA § 31-6-40 (c) (exemptions for certain existing providers). By its terms, the exemption was valid only for the location (the old address) and the scope ("[p]rovision of diagnostic imaging services utilizing one magnetic resonance imaging ('MRI') system [valued at approximately $1,480,000], one computerized tomography ('CT') system [valued at approximately $525,000], and any other equipment not subject to CON review") listed in the written exemption.

In 2001, NASA's owner decided to relocate the center because nearby Dunwoody Medical Center was slated to be closed. A replacement site was located at 5505 Peachtree Dunwoody Road ("the new location") which was approximately three miles from the old location. On February 22, 2001, an agent of NASA e-mailed Clyde Reese, the Department's deputy general counsel, to request a "short-form" CON

---

[1] In 1992, the Act was administered by the State Health Planning Agency ("SHPA"). In 1999, the General Assembly merged SHPA and several other agencies to form the Department. OCGA § 31-5A-1 et seq.; Ga. L. 1999, p. 296, § 1.

application for the new location. Reese responded that the rule for a "short-form" procedure for relocations had been repealed but that it was possible that the Department could "do something outside of CON review." Reese asked that NASA submit a letter detailing the history of the diagnostic imaging center and its proposed move, including "the equipment to be used at the new location, the capital expenditure incurred, etc."

On March 1, 2001, with the landlord at the new location demanding proof of a CON or a CON exemption before finalizing a lease agreement, NASA submitted a request for a "letter of nonreviewability" ("LNR"), a formal Department determination that its planned relocation of the center was exempt from CON review. In its request, NASA informed the Department that its existing equipment would be moved to the new location and that the same services would be offered. NASA informed the Department that necessary renovations to the new site would cost approximately $324,720[2] and that moving and installing the equipment would cost less than $100,000. On March 9, 2001, the Department issued NASA an LNR in which it determined that the relocation was not subject to prior CON review and approval because the services to be offered at the new location would not be considered a new institutional health service under the Act. The Department based this opinion on NASA's representations that relocating the center would not involve a capital expenditure over the applicable threshold ($1,155,881 at that time)[3] and that NASA was not going to purchase or lease new diagnostic equipment but would use the same equipment it used at the old location.

After the Department issued the March 9, 2001 LNR but before the relocation of the center in May 2002, the center's diagnostic imaging equipment began malfunctioning and needed to be replaced. The CT scanner was replaced before the move with a new unit costing over $1.2 million. On May 2, 2001, NASA requested an LNR in connection with the acquisition of a new MRI system. The Department issued an LNR, finding the new MRI system fell within the replacement equipment exemption. Because of the cost of installation, NASA delayed installing the new MRI system, which cost $1,975,664, until the new location was ready.

On July 3, 2002, within two months after the move, the Georgia Alliance of Community Hospitals, Inc. ("GACH")[4] notified the Department that NASA was using a new CT scanner and a new MRI

---

[2] Ultimately, the renovations cost approximately $480,000.

[3] OCGA § 31-6-2 (14) (B).

[4] According to its president, GACH collectively represents private nonprofit and public community hospitals and, among other activities, seeks strong enforcement of the Act so that diagnostic, treatment, and rehabilitation centers will not "cherry-pick" profitable patients,

system at the new location, contrary to its representations in the March 1, 2001 request for an LNR. GACH asked the Department to direct NASA to cease and desist operation at the new location.

In February 2003, after NASA had been operating in the new location for about nine months, the Department conducted an inspection of the new location. NASA employees informed the Department's investigators of the replacement of the CT scanner and of the MRI system and of the first installation of the MRI system in connection with the move. The investigators were also aware that the cost of the replacement equipment, although believed to be exempt from review, exceeded the equipment threshold for CON review.

On February 28, 2003, Diagnostic Imaging of Atlanta, LLC ("DIA"), which competes with NASA, filed a mandamus petition against the Department and the Commissioner, seeking to compel the Department to enforce the Act. DIA's action alleged that NASA's relocation and the cost of the replacement equipment required a CON. On March 3, 2003, the Department responded to GACH's inquiry in a letter summarizing its inspection of the new location. In that letter, the Department stated that the replacement of NASA's MRI system and CT scanner was exempt from prior CON review and approval pursuant to the replacement equipment exemption[5] and concluded that the center was not violating any CON laws or rules. On May 29, 2003, GACH filed a mandamus action, seeking a declaration that NASA's relocation violated the Act. In responding to the two mandamus actions, the Department denied that NASA was required to undergo CON review for the relocation of its center and the replacement of its equipment and maintained that its LNR decision was correctly issued to NASA.

While the mandamus actions were pending, NASA prepared and submitted to the Department a CON application for the relocation of its diagnostic imaging center in which it claimed that the project was exempt from CON approval and review pursuant to the replacement equipment exemption but nonetheless, "out of an abundance of caution," sought CON approval for the project. On November 6, 2003, the Department rejected NASA's CON application, "due to pending litigation associated with the instant relocation project."

On November 14, 2003, the Department issued a cease and desist letter directing NASA to cease operating its diagnostic imaging center at the new location. The Department found, based on "evidence developed during discovery in [the mandamus] cases," that "NASA's relocation of its facility and purchase of new equipment in

leaving the community hospitals to serve a disproportionate share of the "medically indigent."
[5] OCGA § 31-6-47 (a) (10).

excess of the threshold for CON review mandates that NASA's center is subject to the CON review and approval process." NASA requested an administrative hearing to appeal the cease and desist letter, which stayed the deadline for NASA to cease operations. On April 19, 2004, the Hearing Officer issued an initial decision upholding the cease and desist letter and finding the LNR was issued in violation of the Act. NASA filed an application for Department review, and, on June 18, 2004, the Commissioner issued the Department's final decision adopting the Hearing Officer's initial decision and supplementing it with additional conclusions of law. NASA filed a petition for judicial review with the Superior Court of Fulton County, which the court denied in the order appealed here.

1. NASA contends the trial court erred in failing to find that the March 9, 2001 LNR was correct. This issue, however, cannot be decided on this record.

The Department based the March 9, 2001 LNR on its findings that NASA's relocation did not trigger CON review because NASA would not make capital expenditures above the applicable threshold ($1,155,881 in March 2001) and because NASA would not purchase or lease new diagnostic or therapeutic equipment above the applicable threshold ($642,152 in March 2001), citing OCGA § 31-6-2 (14) (B) and (F).[6] Apparently, the Department did not consider whether the project was subject to CON review pursuant to OCGA § 31-6-2 (14) (H). Under that subsection and related sections,[7] a project qualifies as a "new institutional health service" subject to CON review if it will begin providing radiology and diagnostic imaging in a setting which is not part of a hospital using diagnostic equipment with a value in excess of the equipment threshold. In addition, a CON grandfather exemption is valid only for the location for which it is granted. *Phoebe Putney Mem. Hosp. v. Roach*, 267 Ga. 619, 620-621 (1) (480 SE2d 595) (1997). See also *HCA Health Svcs. v. Roach*, 263 Ga. 798, 801 (3) (b), n. 5 (439 SE2d 494) (1994) (a CON is valid only for the defined scope and location for which it is granted). It follows that any relocation of a diagnostic imaging center which had a grandfather exemption triggers CON review if, inter alia, the relocated center would be using an MRI system or CT scanner worth more than the current equipment threshold, regardless of when, how, or by whom the equipment

---

[6] Note: by the time the center actually moved in May 2002, the threshold had increased to $694,556.

[7] See OCGA §§ 31-6-2 (5) (definition of "clinical health services"), (7.1) (definition of "diagnostic, treatment, or rehabilitation center"), (8) (definition of "health care facility"), (14) (H) (equipment value threshold for diagnostic, treatment, or rehabilitation centers to satisfy definition of "new institutional health service"); 31-6-40 (a) (certificate of need required for specified new institutional health services or health care facilities).

had been acquired. Although the record shows that in 1992 NASA's MRI system was valued at approximately $1,480,000 and its CT scanner was valued at approximately $525,000, the record contains no evidence of the equipment's value in March 2001. Without this information, we cannot determine whether the March 9, 2001 LNR was correct when issued.

Furthermore, even if NASA's old MRI system and CT scanner were each worth less than the equipment threshold in March 2001 ($642,152) so that the March 9, 2001 LNR was correct when issued, the LNR did not purport to advise NASA with regard to the situation that had developed by the time the move actually took place. Ultimately, NASA did not move the diagnostic equipment it had used at the old location, as it represented to the Department it would do. Instead, at the new location, NASA used new equipment which exceeded the equipment threshold. NASA contends (as the Department concluded on March 3, 2003) that even with the new equipment the new location did not qualify as a "new institutional health service" because the new MRI system and CT scanner fell within the exemption for replacement equipment provided in OCGA § 31-6-47 (a) (10). That Code section provides that the Act shall not apply to "[e]xpenditures for the minor repair of a health care facility, or parts thereof or services provided or equipment used therein, or replacement of equipment, including, but not limited to, CT scanners." While this exemption may have applied to use of the new equipment at the old location, we find no basis for concluding that the General Assembly intended that the *first* placement or installation of equipment at a new facility could qualify as "*replacement* of equipment." Thus, even if the March 9, 2001 LNR was correct when issued for relocation of the center with the old equipment, the LNR did not apply to the project which NASA actually implemented in May 2002, that is, relocation of its center with new equipment.

2. NASA contends the March 9, 2001 LNR, even if it were not legally correct, was a final agency decision which the Department lacked the authority to revoke and therefore that the Department's decision to enforce the cease and desist order was made upon unlawful procedure or was affected by another error of law. NASA cites to OCGA § 31-6-47 (c), which provides: "By rule, the department shall establish a procedure for expediting or waiving reviews of certain projects the nonreview of which it deems compatible with the purposes of this chapter, in addition to expenditures exempted from review by this Code section." NASA contends that it complied with the

procedure the Department established under this authority, Rule 272-2-.07 (2),[8] when it obtained the March 9, 2001 LNR.

Even assuming the March 9, 2001 LNR was a final agency decision which the Department lacked the authority to revoke, however, the LNR (like a CON) was valid only for the defined scope for which it was granted. The LNR did not apply after NASA changed the scope of the project by replacing the equipment. Accordingly, by issuing the cease and desist order, the Department did not "revoke" the already defunct LNR. NASA has not demonstrated any unlawful procedure or other error of law.

3. NASA contends the Department's conduct and communications before the cease and desist letter amounted to a license or permit for NASA to operate its diagnostic imaging center at the new location and that the Department's decision to revoke that license without providing the notice required by OCGA § 50-13-18 (c)[9] was made upon unlawful procedure or was affected by another error of law.

For purposes of OCGA § 50-13-18 (c), a license is defined as "the whole or part of any agency permit, certificate, approval, registration, charter, or similar form of permission required by law." OCGA § 50-13-2 (3). Arguably, a CON (or CON exemption) is a form of permission required by law for projects subject to CON review. Indeed, the Act requires notice and a fair hearing before a CON may be revoked. OCGA § 31-6-45 (a). On the other hand, nothing in the Act or related regulations requires a person who is developing a health care project or offering a health care service which is *not* subject to CON review to obtain an LNR or any other type of approval from the

---

[8] At the relevant time, Rule 272-2-.07 (2) provided in part:
Pursuant to OCGA § 31-6-47 (c), if a person believes or has reason to believe that the application of an Agency rule or statutory provision may directly affect or impair the legal rights of that person as to some proposed action or course of conduct being considered by that person (including, but not limited to, determinations regarding reviewability, grandfathering decisions, and relocation or replacement determinations), such person may request a written determination from the Agency regarding the application of such Agency rule or statutory provision upon that person's proposed action or course of conduct. . . . [T]his rule shall not be construed as providing an administrative remedy for decisions made by the Agency pursuant to Code Section 31-6-43 which involve the approval or denial of applications for certificates of need.
Ga. Comp. R. & Regs. r. 272-2-.07 (2) (1994).

[9] No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency has sent notice, by certified mail or statutory overnight delivery to the licensee, of individual facts or conduct which warrant the intended action and the licensee has been given an opportunity to show compliance with all lawful requirements for the retention of the license.

Department. Because an LNR is not a form of permission required by law, any revocation of the March 9, 2001 LNR was not subject to the notice requirements of OCGA § 50-13-18 (c).

4. NASA further contends that the Department and the trial court erred in allowing GACH and DIA to intervene. The record shows that during the course of NASA's administrative appeal of the November 14, 2003 cease and desist letter the Department's hearing officer granted the motions of GACH and DIA to intervene. Later, during the course of NASA's petition for review of the Department's final decision upholding the cease and desist letter, the trial court entered an order "confirming" GACH's and DIA's status as parties, declaring that GACH and DIA "have been and shall be permitted to be participants and parties to this Petition for Judicial Review." The Administrative Procedure Act gives a hearing officer the discretion to dispose of motions to intervene. OCGA § 50-13-13 (a) (6). A CON applicant's competitors have standing to oppose a CON application and to administratively appeal a decision granting a CON application. OCGA § 31-6-44 (c); *North Fulton Med. Center v. Roach*, 263 Ga. 814, 815 (2) (a) (440 SE2d 18) (1994). Similarly, a CON applicant's competitors have an interest in defending the denial of a CON application or, as here, a cease and desist letter. See OCGA § 50-13-19 (a) (judicial review of administrative decisions). We find no abuse of discretion in the decisions of the hearing officer and the trial court to allow NASA's competitors to actively participate in the hearings.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JANUARY 24, 2006 —
RECONSIDERATION DENIED FEBRUARY 14, 2006 — ■

*Arnall, Golden & Gregory, Charles L. Gregory, Jason E. Bring,* for appellant.

*Thurbert E. Baker, Attorney General, James D. Coots, Assistant Attorney General, Parker, Hudson, Rainer & Dobbs, Thomas D. Watry, Ray & Sherman, John W. Ray, Schreeder, Wheeler & Flint, Alexander J. Simmons, Jr.,* for appellees.