**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2018**

# In the Court of Appeals of Georgia

A17A1923. BROAD STREET SUPERMARKET, INC., et al. v.    DO-073
    GEORGIA DEPARTMENT OF PUBLIC HEALTH.

DOYLE, Presiding Judge.

We granted a discretionary application filed by Broad Street Supermarket, Inc., d/b/a Moon's Supermarket ("Broad Street"), seeking review of the superior court's order affirming a decision of the Department of Public Health ("DPH"), which disqualified Broad Street's grocery stores from participating in the federal Special Supplemental Nutrition Program for Women, Infants, and Children ("WIC") in Georgia. For the reasons that follow, we reverse.

In 2014, Broad Street obtained WIC authorization for Broad Street's first store, Moon's Supermarket ("Moon's"). On December 23, 2014, Broad Street bought Monticello Family Foods ("Monticello"). Monticello was authorized as a WIC vendor

under its previous ownership, but Broad Street did not apply immediately for new WIC authorization when it purchased Monticello.

In February 2015, based on an automatic notification from the federal government that Monticello was no longer a participant in the United States Department of Agriculture's Supplemental Nutrition Assistance Program ("SNAP"),[1] DPH conducted an on-site investigation of Monticello. During the February 13, 2015 site investigation, store manager Tracy Gilman told the investigators that Monticello "did not have any WIC vouchers on hand," but the store still accepted the vouchers and that owner Jim Morrell "comes into the store once a week to pick up the WIC vouchers." Later that day, DPH contacted Morrell, who told an investigator that he had used Moon's vendor stamp to accept WIC vouchers used at Monticello and deposited those vouchers into Moon's account after Broad Street acquired Monticello because Morrell believed that the WIC application for Monticello could not be processed until March of 2015; he asked the investigator what he should do about WIC vouchers while the application was pending for Monticello, and the investigator

---

[1] In order to be a vendor in the Georgia WIC program, participation in the SNAP program is required.

2

advised him not to accept them at Monticello prior to application approval. Morrell submitted a WIC vendor application for Monticello that same day.

DPH subsequently disqualified Moon's from WIC participation for three years, on the ground that Moon's had engaged in "[a] pattern of receiving, transacting[,] and/or redeeming food instruments or cash-value vouchers outside of authorized channels," under 7 CFR § 246.12 (*l*) (1) (iii) (D).[2] An Administrative Law Judge ("ALJ") reversed Moon's disqualification on grounds that: (i) the record did not establish when or how often Monticello had accepted WIC vouchers; and (ii) DPH had not given Broad Street the required notice and opportunity to take corrective action before disqualifying Moon's. On agency appeal, the agency disagreed with the ALJ on both grounds, reversed the decision, and reinstated Moon's disqualification. The agency subsequently denied Broad Street's request for reconsideration, and on appeal to the superior court, the agency's decision was affirmed. This Court thereafter granted Broad Street's application for discretionary appeal.

1. The Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq., authorizes the superior court to reverse or modify an agency decision only if:

---

[2] DPH also denied Monticello's WIC application. Since that time, however, Broad Street sold Monticello, and the denial of its application is not at issue in the instant appeal.

substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.[3]

Thus, courts review agency findings of fact "to determine whether they are supported by any evidence," while conclusions of law are reviewed de novo.[4] "Upon further discretionary appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency."[5]

---

[3] OCGA § 50-13-19 (h). See also *North Atlanta Scan Assoc. v. Dept. of Community Health*, 277 Ga. App. 583, 583 (627 SE2d 67) (2006).

[4] *Ga. Dept. of Community Health v. Fulton DeKalb Hosp. Auth.*, 294 Ga. App. 431 (669 SE2d 233) (2008) (punctuation omitted).

[5] (Punctuation omitted.) *North Atlanta Scan Assoc.*, 277 Ga. App. at 584.

7 CFR § 246.12 "sets forth design and operational requirements for food delivery systems," including electronic benefit transfer systems, home delivery, cash-value vouchers and food instruments, among others; and provides a framework for states to authorize private vendors to distribute supplemental food under the federal SNAP program.[6]

As discussed above, DPH disqualified Moon's under 7 CFR § 246.12 (*l*) (1) (iii) (D), which is part of a larger subsection listing "[m]andatory vendor sanctions." These sanctions include (i) permanent disqualifications for "trafficking in food instruments or cash-value vouchers or selling firearms [and other items] for food instruments or cash-value vouchers;" (ii) six-year disqualifications for "one incidence of buying or selling food instruments, or cash-value vouchers, for cash . . . or firearms [or other items];" (iii) three-year disqualifications, and (vi) one-year disqualifications. Under 7 CFR § 246.12 (*l*) (1) (iii),

The State agency must disqualify a vendor for three years for:

(A) One incidence of the sale of alcohol or alcoholic beverages or tobacco products in exchange for food instruments or cash-value vouchers;

_____

[6] 7 CFR § 246.12 (a).

5

(B) A pattern of claiming reimbursement for the sale of an amount of a specific supplemental food item which exceeds the store's documented inventory of that supplemental food item for a specific period of time;

(C) A pattern of vendor overcharges;

(D) A pattern of receiving, transacting and/or redeeming food instruments or cash-value vouchers outside of authorized channels, including the use of an unauthorized vendor and/or an unauthorized person;

(E) A pattern of charging for supplemental food not received by the participant; or

(F) A pattern of providing credit or non-food items, other than alcohol, alcoholic beverages, tobacco products, cash, firearms, ammunition, explosives, or controlled substances as defined in 21 USC § 802, in exchange for food instruments or cash-value vouchers.

Subsection (*l*)(1)(xii) discusses "[m]ultiple violations during a single investigation."

It states that

[w]hen during the course of a single investigation the State agency determines a vendor has committed multiple violations (which may include violations subject to State agency sanctions), the State agency must disqualify the vendor for the period corresponding to the most serious mandatory violation. However, the State agency must include all

violations in the notice of administration action. If a mandatory sanction is not upheld on appeal, then the State agency may impose a State agency-established sanction.

The notice requirement at issue is found in § 246.12 (*l*) (3), which explains that:

The State agency must notify a vendor in writing when an investigation reveals an initial incidence of a violation for which a pattern of incidences must be established in order to impose a sanction, before another such incidence is documented, unless the State agency determines, in its discretion, on a case-by-case basis, that notifying the vendor would compromise an investigation.[7] This notification requirement applies to the violations set forth in paragraphs (*l*) (1) (iii) (C) through (*l*) (1) (iii) (F),[8] (*l*) (1) (iv), and (*l*) (2) (i) of this section.

(i) Prior to imposing a sanction for a pattern of violative incidences, the State agency must either provide such notice to the vendor, or document in the vendor file the reason(s) for determining that such notice would compromise an investigation.[9]

---

[7] There is no indication in the current record that DPH determined that providing pre-disqualification notice to Broad Street or Moon's would compromise an investigation.

[8] Applying to the violation at issue.

[9] "This provision will help vendors to comply with their responsibilities and thus prevent sanctions." 71 FR § 43371, 43372 (I).

(ii) The State agency may use the same method of notification which the State agency uses to provide a vendor with adequate advance notice of the time and place of an administrative review in accordance with § 246.18 (b) (3).

(iii) If notification is provided, the State agency may continue its investigation after the notice of violation is received by the vendor, or presumed to be received by the vendor, consistent with the State agency's procedures for providing such notice.

(iv) All of the incidences of a violation occurring during the first compliance buy visit must constitute only one incidence of that violation for the purpose of establishing a pattern of incidences.

(v) A single violative incidence may only be used to establish the violations set forth in paragraphs (*l*) (1) (ii) (A), (*l*) (1) (ii) (B), and (*l*) (1) (iii) (A) of this section.[10]

The ALJ determined that, under § 246.12 (*l*) (3), when DPH first learned that Moon's had redeemed WIC vouchers received by Monticello, DPH was required to notify Broad Street that a violation had been revealed before documenting another violation for purposes of establishing the pattern that would support a three-year disqualification. On review, the agency and the superior court disagreed, concluding

---

[10] 7 CFR § 246.12 (*l*) (3).

that no notice was required because (i) the initial investigation revealed a pattern of violations; and (ii) the violations were not discovered during a "compliance buy visit," meaning that 7 CFR § 246.12 (*l*) (3) (iv) did not apply.

We agree with Broad Street that DPH's interpretation of the notice regulation is incorrect.[11] Under DPH's interpretation, the initial discovery of multiple incidences of violations of § 246.12 (*l*) (1) (iii) (D) during a "compliance buy"[12] (an undercover purchase) would require notice and evidence of subsequent incidences of violations in order to establish the necessary pattern of violations prior to disqualifying a vendor, whereas the discovery of multiple incidences of a violation during an overt monitoring visit (such as the visit here) would authorize immediate disqualification.[13] This interpretation would eviscerate the notice requirement in many cases to which

---

[11] See *Eagle West, LLC v. Ga. Dept. of Transp.*, 312 Ga. App. 882, 888 (720 SE2d 317) (2011) ("[P]articular words of statutes are not interpreted in isolation; instead, courts must construe a statute to give sensible and intelligent effect to all of its provisions, and must consider the statute in relation to other statutes of which it is part.") (punctuation omitted).

[12] "Compliance buy means a covert, on-site investigation in which a representative of the Program poses as a participant, parent or caretaker of an infant or child participant, or proxy, transacts one or more food instruments or cash-value vouchers, and does not reveal during the visit that he or she is a program representative." 7 CFR § 246.2.

[13] "Routine monitoring means overt, on-site monitoring during which program representatives identify themselves to vendor personnel." 7 CFR § 246.2.

the main paragraph of § 246.12 (*l*) (3) — the notice requirement, which explicitly applies to violations of § 246.12 (*l*) (1) (iii) (D) — otherwise would apply.[14] Moreover, it leads to an absurd result in which vendors that hide violations from investigators making routine visits are protected while those vendors who admit to such violations are punished. Accordingly, because the DPH failed to comply with federal notice requirements before imposing a three-year sanction for the violations, we reverse the superior court's order affirming the agency's decision.[15]

2. Based on our conclusion in Division 1, we do not address Broad Street's remaining enumerations of error.

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

[14] See 71 FR § 43371, 43376-43377 (II) (1) (b) (explaining implementation of the proposed regulatory change resulting in the current form of 7 CFR § 246.12 (*l*) (3) and the result that states are required to issue notification to vendors for violations prior to sanctions even if evidence of a pattern is uncovered during the first compliance buy).

[15] Cf. *Ramzi, Inc. v. Dept. of Public Health*, 85 Mass. App. Ct. 353, 359-360 (1) (d) (10 NE3d 139) (2014) (holding that the agency failed to provide appropriate notification before imposition of a sanction, and therefore, overturning the sanctions at issue).