**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 8, 2018**

# In the Court of Appeals of Georgia

A18A0457. CRITTENDEN et al. v. WHITE.

McFADDEN, Presiding Judge.

This case involves a legal permanent resident's application for Medicaid benefits. The commissioners of the Georgia Department of Human Services and the Georgia Department of Community Health appeal a superior court decision that Lissia White is entitled to the benefits. The agencies argue that the superior court erred by reversing the final agency decision that White, a British citizen, had to be a legal permanent resident for five years before she applied for Medicaid in order to be eligible for Medicaid benefits. White counters that federal law imposing a waiting period does not apply to her because she entered the United States before August 22, 1996 (the effective date of the legislation establishing the waiting period) has been continuously present in the United States since that time, and has obtained qualified

alien status. We agree with White that the five-year waiting period does not apply to her. So we affirm the superior court.

1. *Facts and procedural posture*.

The federal Medicaid program

> provides subsidies to the states to furnish medical assistance to "families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services." 42 USC § 1396-1. Although a state's participation in the Medicaid program is voluntary, a state that elects to join must administer a state Medicaid plan that meets federal requirements.

*Ga. Dept. of Behavioral Health & Developmental Disabilities v. United Cerebral Palsy of Ga.,* 298 Ga. 779, 779-80 (1) (a) (784 SE2d 781) (2016) (citations omitted). Appellant Georgia Department of Community Health is the state agency responsible for administering Georgia's Medicaid program. See 42 CFR § 431.10; see also OCGA § 49-4-142. The Division of Family and Children Services of appellant Georgia Department of Human Services makes Medicaid eligibility determinations. See OCGA § 49-4-3 (b). See generally *Cook v. Glover*, 295 Ga. 495, 497 (761 SE2d 267) (2014).

White is a British citizen and a legal permanent resident of the United States. She entered the United States in 1991. Her immigration status at that time is not clear. In 1994, White was issued a conditional green card that expired in 1996. In 2014, White was issued another green card that expires March 27, 2024. In 2016, White applied for Medicaid benefits.

A caseworker with the Division of Family and Children Services denied White's application for benefits on the ground that she had not been a legal permanent resident of the United States for five years. In making this determination, the caseworker examined White's British passport, which bore a stamp reading "Process for I-551 temporary evidence of lawful permanent residence," as well as a stamp reading "NYC 12-13-94"; White's work permit, which expired in 1996; and her current green card which states "Resident since: 03/25/2014." The caseworker also ran a report using the Systematic Alien Verification for Entitlements ("SAVE") Program through a database of the United States Department of Homeland Security. According to the SAVE report, White's "Date of Entry" was March 25, 2014, which is the date of issuance of her current green card. White appealed the decision to deny her application for benefits.

An administrative law judge of the Office of State Administrative Hearings affirmed the agency decision denying benefits. White sought final agency review. The Commissioner of the Department of Community Health, through an administrative hearing officer, adopted the administrative law judge's findings of fact and conclusions of law and affirmed the decision to deny benefits.

White then petitioned the superior court for judicial review. The superior court reversed the final agency decision, finding that the five-year waiting period does not apply to White because she entered the United Suites before the federal legislation's effective date. After we granted their application for discretionary appeal, the agencies filed this appeal.

2. *Standard of review.*

Under the Georgia Administrative Procedure Act, OCGA § 50-13-1 et seq., a superior court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." OCGA § 50-13-19 (h). The superior court may reverse an agency decision only if

> substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure;

4

(4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Id. Courts review agencies' factual findings to determine whether they are supported by any evidence; courts review agencies' conclusions of law de novo. *Broad Street Supermarket v. Ga. Dept. of Pub. Health*, __ Ga. App. __ (Case No. A17A1923, decided Mar. 6, 2018). "Upon further discretionary appeal to this [c]ourt, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." Id. (citations and punctuation omitted).

3. *Analysis*.

As part of welfare policy reforms enacted in 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the Welfare Reform Act" or "the Act"). Pub. L. 104-193, 110 Stat. 2105 (1996). Title IV of the Welfare Reform Act restricts public benefits for aliens . . . . With regard to federal benefits, Congress created two categories of aliens: "qualified aliens," who may be eligible for federal benefits, and all other aliens, who are ineligible for federal benefits. [8 USC] §§ 1611-13, 1641.

5

*Korab v. Fink*, 748 F3d 875, 878-79 (I) (9th Cir. 2014). In relevant part, the Act defines "the term 'qualified alien' [to mean] an alien who, at the time the alien applies for, receives, or attempts to receive a [f]ederal public benefit, is an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act." 8 USC § 1641 (b) (1). Even qualified aliens may have to wait five years from their date of entry into the United States to be eligible for federal public benefits. The statute establishing the waiting period provides:

> Notwithstanding any other provision of law . . . an alien who is a qualified alien (as defined in section 431 [8 USCS § 1641]) and who enters the United States on or after the date of the enactment of this Act [enacted Aug. 22, 1996] is not eligible for any [f]ederal means-tested public benefit for a period of 5 years beginning on the date of the alien's entry into the United States with a status within the meaning of the term "qualified alien".

8 USC § 1613 (a). The negative implication of the plain language of this statute is that an alien who is a qualified alien and who entered the United States before August 22, 1996, is eligible for any federal means-tested public benefit. See *United States v. Baptiste*, 876 F3d 1057, 1062 (III) (11th Cir. 2017) ("Under the negative-implication canon of statutory interpretation (also known as 'expressio unius' and 'inclusio unius'), the express inclusion of one thing [such as an alien who enters the United

6

States on or after August 22, 1996] implies the exclusion of others [such as an alien who enters the United States before August 22, 1996].").  See also Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012).

The appellants argue that White's date of entry as a qualified alien is March 2014 — the date reflected on the SAVE report from the Department of Homeland Security — so the waiting period applies to her. They discount White's pre-1996 date of entry because her visa expired in 1996. In effect, they argue that a person who entered the United States before August 22, 1996, and who is a qualified alien at the time he or she seeks a federal means-tested public benefit, must also have maintained qualified alien status in order to avoid the five-year waiting period. But they cite no authority for the imposition of a requirement of continuous qualified alien status so as to be exempt from the waiting period. We will not read such a requirement into the statute. See *Dept. of Revenue v. Sledge*, 241 Ga. App. 833, 834 (1) (528 SE2d 260) (2000) (when statute is plain, we construe it literally and do not read conditions into it).

Further, federal guidelines demonstrate that only a continuous *physical* presence is required. The United States Department of Justice issued guidelines entitled "Interim Guidance on Verification of Citizenship, Qualified Alien Status and

7

Eligibility Under Title IV of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996" that address the issue. 62 Fed. Reg. 61344.[1] In relevant part, the interim guidance provides that when verifying the eligibility of aliens for federal public benefits, state agencies should:

> 1. Determine whether the qualified alien entered the United States before August 22, 1996, by reviewing the documents evidencing his or her immigration status or, if the documents do not indicate whether the alien entered before August 22, 1996, by reviewing additional documentation pursuant to guidance provided by the agency or department overseeing your program. Further determine whether the qualified alien obtained qualified alien status prior to August 22, 1996. . . .
>
> > • If the applicant entered the United States before August 22, 1996, and obtained qualified alien status before that date, he or she is eligible for all federal means-tested public benefits for which he or she satisfies all programmatic

---

[1] We recognize that the title of the federal guidance indicates that it is "interim" and that the introduction to the guidance states that the Welfare Reform Act required "the Attorney General, by February 1998, to promulgate *final* regulations requiring verification that an applicant is a qualified alien eligible to receive federal public benefits under the Act." 62 Fed. Reg. at 61345 (emphasis supplied). Both White and the appellants cite the interim guidance without addressing whether it is still in effect in whole or in part. Neither White nor the appellants cite any final regulations dispositive of the issue here. Finally, our review of the Code of Federal Regulations has disclosed nothing dispositive. See 42 CFR §§ 435.400 through 435.407.

eligibility requirements. You should not engage in any further verification of immigration status for these persons.

• *If the applicant entered the United States before August 22, 1996, but obtained qualified alien status after that date, you must verify that the alien was continuously present in the United States from the latest date of entry prior to August 22, 1996, until the date he or she obtained qualified alien status.* In general, any single absence from the United States of more than 30 days, or a total of aggregated absences of more than 90 days, should be considered to interrupt "continuous presence." To verify continuous presence, you should follow guidance provided by the agency or department overseeing your program, which may call for an applicant to present additional documentation such as tax returns, bills, rent receipts, or a letter from an employer. *If the applicant can demonstrate continuous presence, he or she is eligible for all federal means-tested public benefits for which he or she satisfies all programmatic eligibility requirements.*

• If the applicant entered the United States before August 22, 1996, and obtained qualified alien status after that date but was not continuously present in the United States from the latest date of entry prior to August 22, 1996, until obtaining such status, determine if he or she is eligible under Paragraphs 2 and 3 below.

9

• If the applicant entered the United States on or after August 22, 1996, and is a qualified alien, determine if he or she is eligible under Paragraphs 2 and 3 below.

2. With certain exceptions [not applicable to White], an applicant who entered the United States on or after August 22, 1996, and has attained qualified alien status, or who entered the United States before August 22, 1996, and obtained qualified alien status after that date but did not remain continuously present in the United States from the latest date of entry prior to August 22, 1996, until obtaining such status, is ineligible for all federal means-tested public benefits during the first five years after he or she obtained qualified alien status. Thus, unless the applicant falls within one of the excepted categories [not applicable to White], such an applicant is only eligible for federal means-tested public benefits for which he or she satisfies all programmatic eligibility requirements if five years have passed from the date the applicant attained qualified alien status. . . .

62 Fed. Reg. 61344, 61415 (emphasis supplied). The appellants do not dispute that White entered the United States before August 22, 1996, and obtained qualified alien status after that date. Nor do they argue that she was not "continuously present in the United States from the latest date of entry prior to August 22, 1996, until the date . . . she obtained qualified alien status." Id. So under the Welfare Reform Act, as interpreted by the Department of Justice in the interim guidance, White "is eligible

10

for all federal means-tested public benefits for which . . . she satisfies all programmatic eligibility requirements." Id.

The appellants argue that the Georgia Department of Human Services Medicaid Manual supports their position that White's date of entry is 2014 instead of before 1996. Pertinent to the issues before us, the manual provides,

> **Date of Entry** The recognized date of entry into the U.S. is the date recognized by [the United States Department of Homeland Security] as opposed to the actual, physical date of entry. . . . An immigrant who entered the U.S. for permanent lawful residence prior to August 22, 1996, meets the citizenship/immigration criteria for any Family or ABD Medicaid COA.

Georgia Economic Support Services Manual, Vol. II/MA, MT 51-01/17, § 2215-9, http://odis.dhs.ga.gov/ChooseCategory.aspx?cid=1037 (retrieved March 26, 2018). But it is erroneous for a Georgia court to give the full "deference due a [state] statute, rule or regulation to a term in a departmental manual, the terms of which ha[ve] not undergone the scrutiny afforded a statute during the legislative process or the adoption process through which all rules and regulations must pass." *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159-160 (2) 664 SE2d 223) (2008). And the federal interim guidance is directly on point and comports with the language

11

of the federal statute. Under those provisions, White is entitled to Medicaid benefits. Cf. *Andrianova v. Indiana Family & Social Svcs. Admin.*, 799 NE2d 5 (Ind. Ct. App. 2003) (in reliance on interim guidance, ruling that plaintiff who entered the United States before August 22, 1996, and obtained qualified alien status after that date was not exempt from the five-year waiting period because she was not continuously present in the United States).

Because the final agency decision is based on an error of law, the superior court did not err in reversing that decision, and we affirm the superior court. See OCGA § 50-13-19 (h) (3).

*Judgment affirmed. Ray and Rickman, JJ., concur.*