Ramzi, Inc.,[1] & others[2] *vs.* Department of Public Health.

No. 12-P-1450.

Worcester. December 6, 2013. - May 28, 2014.

Present: Fecteau, Sullivan, & Maldonado, JJ.

*Department of Public Health. Public Welfare,* Food stamp benefits. *Regulation. Notice. Commonwealth,* Contracts. *Contract,* With Commonwealth. *Administrative Law,* Agency's interpretation of regulation.

A Superior Court judge, in affirming the decision of an administrative magistrate of the Division of Administrative Law Appeals (DALA) upholding, in pertinent part, a determination of the Department of Public Health (department) to disqualify a vendor of WIC (a federally funded supplemental food program for income-eligible women, infants, and children) for three years, erred in concluding that the presence of a covert investigation was in and of itself sufficient to invoke an exception to the requirement that the department notify the vendor of certain initial violations, where such a conclusion was in conflict with an amendment to the program's governing statute and ensuing regulatory changes [356-360]; however, the judge correctly upheld DALA's determination that the department did not err in disqualifying the vendor for one year based on certain violations included in the department's sanction schedule, and there was no merit to the vendor's claim that the evidence was insufficient to support the department's decision to impose a one-year suspension, rather than a monetary penalty [361-362].

Civil action commenced in the Superior Court Department on October 20, 2010.

The case was heard by *Richard T. Tucker,* J., on a motion for judgment on the pleadings.

*John M. Goggins* for the plaintiffs.

*Iraida J. Alvarez,* Assistant Attorney General, for the defendant.

Sullivan, J. Ramzi, Inc., doing business as North End Market,

[1]Doing business as North End Market.

[2]Nahed Benyamin and Emad Benyamin.

Nahed Benyamin, and Emad Benyamin (collectively, Ramzi) appeal from a judgment of the Superior Court affirming, in pertinent part, a decision of the Division of Administrative Law Appeals (DALA)[3] upholding a determination of the Department of Public Health (department) to disqualify Ramzi as a WIC[4] vendor for three years and to terminate Ramzi's WIC vendor status. On appeal, Ramzi contends that the judge erred as a matter of law in affirming the DALA decision. We conclude that an amendment to the governing statute, and ensuing regulatory changes, require a remand to DALA for further consideration of so much of its decision disqualifying Ramzi for a three-year period. Accordingly, we affirm in part and reverse in part.

*Background.* The undisputed facts are set forth in the administrative record and are summarized as follows.

1. *The regulatory scheme.* WIC is a federally funded supplemental food program for income-eligible women, infants, and children. The program, which is administered by the States, provides WIC checks redeemable in grocery stores, pharmacies, and farmers' markets for approved foods. See 42 U.S.C. § 1786 (2012); 7 C.F.R. § 246.1 (2009).[5] In the Commonwealth, WIC is administered by the department, subject to regulations promulgated by the United States Department of Agriculture (Department of Agriculture). See 42 U.S.C. § 1786(b)(12), (f); 7 C.F.R. §§ 246.1, 246.3(b).

2. *Vendor agreements and compliance monitoring.* The department's vendor agreement incorporates pertinent regulatory requirements applicable to WIC vendors. The department and Ramzi entered into a vendor agreement, which outlines the responsibilities of a WIC vendor and potential violations and penalties for those violations, as set forth in the Federal regulations. 7 C.F.R. § 246.12(h)(1)(i), (h)(3)(i)-(xxv). Upon entering into the vendor agreement, Ramzi became a qualified WIC

---

[3]The Department of Public Health has not cross appealed from those portions of the judgment reversing the DALA decision.

[4]" 'WIC' is an acronym for 'Women, Infants, and Children,' a Federal special supplemental nutrition program for women, infants, and children." *Commonwealth* v. *Lopes,* 455 Mass. 147, 149 n.2 (2009).

[5]This provision of the United States Code was amended in 2009. All references to the applicable Federal regulations are to those effective March 9, 2009, unless otherwise noted. See 74 Fed. Reg. 544 (2009).

vendor and was authorized to sell WIC-approved items to WIC recipients according to the protocol set out in the vendor agreement. *Ibid.*

Federal regulations require that the department routinely monitor State-approved WIC vendors for "compliance with program requirements." 7 C.F.R. § 246.12(j)(1). Violations of the standards set forth in the vendor agreement may result in sanctions up to and including suspension or termination from the WIC program. The vendor agreement sets out four classes of violations, ranging from Class I to Class IV. Each class represents a different and more serious degree of violation (Class I being the highest), and carries penalties of increasing severity. See 7 C.F.R. § 246.12(l)(1)(ii)-(iv), (l)(2)(i).

3. *The covert buys.* The department sent an undercover compliance buyer (buyer) to the North End Market (market) on four separate occasions in September and October of 2009. See 7 C.F.R. §§ 246.2, 246.12(j)(4)(i)-(ii). During the first visit, the buyer purchased items using two types of WIC checks.[6] The cashier asked the buyer to sign the WIC checks before the cashier wrote the total amount of the buyer's purchase on the checks, a Class IV violation. See 7 C.F.R. § 246.12(l)(2)(i). After the visit, Ramzi submitted the checks to the department for reimbursement for an amount greater than the actual amount of the items purchased by the buyer, a Class II violation. See 7 C.F.R. § 246.12(l)(1)(iii)(C). This conduct was repeated on each of the three subsequent visits to the market by the buyer.[7] The department also determined that Ramzi failed to disclose prices of WIC-approved items offered for sale on two occa-

---

[6]The check type, among other things, determines which WIC-approved items a WIC purchaser can buy with that particular check. See 7 C.F.R. § 246.12(f)(2)(i)-(vii).

[7]For example, during the first compliance visit on September 20, 2009, the department determined that the buyer actually purchased $16.05 worth of WIC-approved items with one check and $11.66 with the other. Ramzi submitted these checks for reimbursement in the amount of $25.32 and $15.75, respectively. During three subsequent compliance buys, Ramzi submitted checks for reimbursement valued at either $25.32, $25.02, or $15.75, without regard to the actual (lesser) purchase price of the buyer's WIC-approved items. See 7 C.F.R. § 246.12(l)(1)(iii)(E). There were two or more violations on each of the three subsequent days of the covert investigation. Different cashiers committed the violations.

sions, posted a price for a WIC item that was higher than the price Ramzi had on file with the department, and failed to enter the amount of the purchase before the buyer countersigned the check on four occasions, all Class IV violations. See 7 C.F.R. § 246.12(l)(2)(i).

4. *The sanctions.* Based on the Class II violations, the department imposed the sanctions set forth in the Federal regulations and incorporated in the vendor agreement. The department terminated Ramzi's vendor agreement and disqualified Ramzi from participating as a WIC vendor for three years. See 7 C.F.R. § 246.12(l)(1)(iii). The department also assessed seventy sanction points for the Class IV violations that occurred during the 2009 investigation. The penalty for the Class IV violations was a one-year disqualification. See 7 C.F.R. § 246.12(l)(2). Because the State agency must disqualify the vendor for the period corresponding to the most serious mandatory violation, the three-year disqualification for the Class II violation was imposed. See 7 C.F.R. § 246.12(l)(1)(xii).

*Discussion.* Our view of the order allowing judgment on the pleadings is governed by G. L. c. 30A, § 14. We "may overturn or modify the agency's decision only on narrow grounds, such as if it is '[u]nsupported by substantial evidence' or '[b]ased upon an error of law.' " *Gauthier* v. *Director of the Office of Medicaid*, 80 Mass. App. Ct. 777, 783 (2011), quoting from G. L. c. 30A, § 14(7), as appearing in St. 1973, c. 1114, § 3.

1. *The Class II violations.* The vendor agreement specifies that Class II violations include, among other things, "a pattern of . . . [o]vercharging . . . by writing in a price on the WIC check that is higher than . . . [what was] actually purchased" and "a pattern of . . . [c]harging . . . a set price by check type instead of pricing each check for actual, authorized WIC products actually purchased." This definition mirrors the Federal regulation. 7 C.F.R. § 246.12(l)(1)(iii)(C), (E). The vendor agreement defines a pattern "as two or more incidences of a violation." The department found, and DALA concluded, that Ramzi committed multiple Class II violations by (1) overcharging the department on four separate occasions, and (2) charging a set price by check type instead of charging the actual price of the items purchased on four separate occasions.

a. *Notice.* On appeal, Ramzi does not contest the sufficiency of the evidence of the violations.[8] Rather, Ramzi contends that it did not receive written notice of the initial violation in contravention of the clause in the vendor agreement that requires the department to "notify a vendor in writing when an investigation reveals an initial violation for which a pattern of violations must be established in order to impose a sanction, before another such violation is documented, *unless the [department] determines that notifying the vendor would compromise its investigation*" (emphasis original). Ramzi contends that in the absence of notice, it was improper to find that there was a pattern of violations.[9] The department contends, and the judge found, that no notice was required because there was an ongoing covert operation that fell within the exception in the vendor agreement.

As noted above, the vendor agreement is a creature of Federal law and regulation. See 7 C.F.R. § 246.12(h)(1)(i), (h)(3)(i)-(xxv). By its terms, and the provisions of the governing regulations, the vendor agreement must be construed in accordance with applicable law. Similarly, while "we give 'substantial deference' to an agency's interpretation of those statutes which it is charged with enforcing," *Souza* v. *Registrar of Motor Vehicles,* 462 Mass. 227, 228-229 (2012), quoting from *Providence & Worcester R.R.* v. *Energy Facilities Siting Bd.,* 453 Mass. 135, 141 (2009), the department may not enforce the vendor agreement in a manner violative of the Federal mandate.

b. *Congressional action.* The notice provision in the vendor agreement is a result of the passage of § 203(c)(5) of the

---

[8]Although Ramzi's brief refers to sufficiency, Ramzi agreed at oral argument that the challenge to the findings was not a factual one.

[9]Under the applicable regulations and the vendor agreement, a warning letter is required only where there is a violation that requires a pattern, including but not limited to violations for a pattern of overcharging; receiving, transacting, and/or redeeming WIC checks outside of authorized channels, including the use of an unauthorized vendor and/or an unauthorized person; charging for supplemental food not received by the participant; providing credit or nonfood items, other than alcohol, alcoholic beverages, tobacco products, cash, firearms, ammunition, explosives, or controlled substances in exchange for WIC checks; or providing unauthorized food items in exchange for WIC checks, including charging for supplemental foods provided in excess of those listed on the WIC check. See 7 C.F.R. § 246.12(l)(3); 7 C.F.R. § 246.12(l)(1)(iii)(B)-(F), (l)(1)(iv), (l)(2)(i).

Child Nutrition and WIC Reauthorization Act of 2004, Pub. L. No. 108-265, 118 Stat. 773 (2004) (Act). The Act, which was effective October 1, 2004, amended the Child Nutrition Act of 1966 to require notice of an initial violation where sanctions are based on a finding of a pattern of occurrences, unless notice would compromise the investigation.[10] See 42 U.S.C. § 1786(f)(26). In December of 2004 and April of 2005, the Department of Agriculture issued policy memoranda to the State agencies. Those memoranda explained that the new legislation superseded previous regulations, and imposed the written notice requirement. See WIC Final Policy Memorandum # 2005-1, Implementation of Certain WIC Vendor Provisions of P.L. 108-265 (Dec. 6, 2004) ("Vendor agreements and sanction schedules need to be reviewed and amended as appropriate to reflect this new requirement");[11] WIC Final Policy Memorandum # 2005-1A, Implementation of Certain WIC Vendor Provisions of P.L. 108-265 (Apr. 20, 2005).[12]

c. *Regulatory proceedings.* The December 6, 2004, Memorandum suggested that a covert operation was sufficient to justify an exception to the notification requirement.[13] After issuance of a proposed regulation[14] and the ensuing notice and comment period, the Department of Agriculture rejected a categorical ap-

---

[10] The Act provides, "If a State agency finds that a vendor has committed a violation that requires a pattern of occurrences in order to impose a penalty or sanction, the State agency shall notify the vendor of the initial violation in writing prior to documentation of another violation, unless the State agency determines that notifying the vendor would compromise an investigation."

[11] http://www.fns.usda.gov/sites/default/files/2005-1-Implementation ofCertainWICVendorProvisions.pdf (last viewed May 22, 2014). See 74 Fed. Reg. 550.

[12] http://www.fns.usda.gov/sites/default/files/2005-1A-Implementation ofCertainWICVendor%20Provisions.pdf (last viewed May 22, 2014).

[13] "As noted above, the State agency is not required to notify the vendor after the initial violation if the State agency determines that such notice would compromise an investigation. The notice could compromise an investigation if the investigation is covert, such as a compliance buy investigation, which involves an investigative agent posing as a WIC participant and transacting WIC food instruments. In such circumstances, the notice would reveal the existence of an investigation which had been previously unknown to the vendor." WIC Final Policy Memorandum # 2005-1, *supra.*

[14] In Federal parlance, when changes are proposed to a regulation, "proposed rules" are promulgated for notice and comment. Once final, the Federal agency issues a "final rule." The "final rule" and the regulation are one and

proach to covert operations in the final regulation.[15] The comments and the final regulation, like the proposed regulation, state that determinations must be made on a case-by-case basis, and that the agency must either issue a written notice after the first violation, or document in the vendor file the "reason(s) for determining that such notice would compromise an investigation." 74 Fed. Reg. 551 (2009). 7 C.F.R. § 246.12(l)(3)(i). By way of further explanation, the background section to the final rule also states, "§ 246.12(l)(3) of the final rule, unchanged from the proposed rule, *does not permit the State agency to exclude an investigation from the notification requirement on the sole basis that the investigation is covert*" (emphasis added). 74 Fed. Reg. 550.

d. *Impact of the final regulations.* Although the parties briefed and argued the issue of notice on appeal, neither party initially addressed the existence of the Act or the ensuing regulations. Ramzi confined his arguments to the vendor agreement; the department relied on regulations in effect on January 1, 2009, which stated that no notice was required.[16] As noted above, this regulation was explicitly superseded by the statutory amendment; the Department of Agriculture's December 6, 2004, Memorandum; and the final regulations, effective March 9, 2009.

After supplemental briefing, Ramzi asserts that the notice requirement has not been satisfied and is applicable to all violations. The notice requirement, while clearly applicable to

the same. For ease of reference, we refer here to the proposed regulation and the final regulation, with citations to the Federal Register. See 5 U.S.C. § 553 (2012); Stein, Mitchell, Mezines, 3-13 Administrative Law § 13.02 (2013).

[15]Proposed regulations were issued which provided that the State agency must either notify the vendor in writing of the initial violation or "document in the vendor file the reason(s) for determining that such notification would compromise an investigation." 71 Fed. Reg. 43,376 (2006). The background section to the proposed regulation likewise stated that a State agency would not be required to notify a vendor after an initial violation if the State agency determined that the notice "could" compromise an ongoing compliance buy investigation. 71 Fed. Reg. 43,377. The language in the introduction to the proposed regulation was identical to the language in the December 6, 2004, Memorandum, set forth in note 13, *supra.*

[16]"The State agency does not have to provide the vendor with prior warning that violations were occurring before imposing any of the sanctions of paragraph (1) of this section." 7 C.F.R. § 246.12(l)(3) (as in effect on January 1, 2009).

Class II violations, is not applicable to Class IV violations under the regulations, because the Class IV violations do not require proof of a pattern. See note 9, *supra*. Accordingly, we consider the notice requirement only with respect to the Class II violations.

The department asserts that the presence of a covert operation coupled with the wilful nature of the initial violations is sufficient to justify the lack of notice with respect to Class II violations. At the same time, the department now correctly points out that Pub. L. No. 108-265 and the final regulations (effective March 9, 2009) governing the notice issue were not addressed at DALA or in the Superior Court. The record is inadequate to address the department's exercise of discretion, or whether a statement of reasons is documented in Ramzi's vendor file.[17] The applicable law and regulations were not provided to the judge of the Superior Court, or to DALA, and neither party has provided us with the DALA transcript from which to ascertain the presence of other factors, or the kind of case-by-case analysis suggested in the regulations. However, based on the applicable law, it is clear that the judge's conclusion that the presence of a covert investigation is in and of itself sufficient to invoke the exception to the notice requirement is in conflict with the governing regulation and therefore cannot stand. We therefore reverse this portion of the judgment and remand the case for further proceedings.

---

[17]In its supplemental submission, the department argues for the first time that Ramzi waived the notice issue before DALA. "The defense of waiver is itself waivable." *Rivas* v. *Chelsea Hous. Authy.*, 464 Mass. 329, 336 (2013). Notice was litigated in the Superior Court and briefed and argued in this court. We therefore "decline to treat the claim as waived," *ibid.*, in view of the importance of the issue to the department's ongoing enforcement efforts and to vendors who are affected by them.

The department also argues for the first time in its supplemental submission that both the vendor agreement and 7 C.F.R. § 246.18(a)(1)(iii) bar administrative review of a decision not to notify a vendor of an initial violation. As this argument was not made to either DALA or the judge of the Superior Court, the notice obligation under the March 9, 2009, regulations was not considered below. We have before us no record evidence that a "decision not to notify" was made. Rather, this appeal addresses the department's obligation to make that decision. The department's contention is sufficiently premature and underdeveloped, both factually and legally, at this juncture that we decline to address it in the absence of a complete record and full briefing.

2. *The Class IV violations.* A State agency may provide further sanctions for certain violations not specified in the Federal regulations provided that the sanctions are included in the State agency's sanction schedule. See 7 C.F.R. § 246.12(l)(2)(i) (defining "State agency vendor sanctions"). Here the vendor agreement outlines in detail the Class IV State agency violations, and levies sanction points for specified Class IV violations. The vendor agreement specifies that "[t]he accumulation of twenty (20) or more Sanction Points based on Class IV violation(s) shall constitute sufficient grounds to disqualify a Vendor for one (1) year." No pattern need be established to sustain a one-year suspension based on State agency vendor sanctions. See *ibid.*; 74 Fed. Reg. 551-552.

The department levied a total of eighty sanction points for various Class IV violations. Of the eighty points, seventy points were assessed for violations during the four 2009 compliance buys, and ten points were previously assessed in 2008 during a separate investigation. On appeal, Ramzi argues that the 2008 violation notice was insufficient to serve as notice of a pattern of Class IV violations in 2009.[18] Neither the regulations nor the vendor agreement require that a pattern be established based on the accumulation of sanction points. See note 9, *supra.* "The State agency has the discretion to define such violations and the resulting sanctions, including the number of violative incidents required[, provided that] the resulting disqualifications may not exceed one year." 74 Fed. Reg. 552.

We need not reach Ramzi's argument that there was a deprivation of due process because it was not afforded an opportunity to appeal the 2008 violation notice. As the administrative magistrate stated, the department's "case on the Class IV violations noted during the compliance buyer's 2009 store visits sufficed to show that a one-year disqualification from the WIC Program was mandatory under the Vendor Agreement" without reference to the 2008 violation. The judge was correct in upholding DALA's determination that the department did not err in disqualifying Ramzi as a WIC vendor for one year.

---

[18]In its brief to the Superior Court, Ramzi agreed that no pattern was required. Accordingly, the argument is waived, and if not waived, it lacks merit for the reasons stated.

Ramzi also challenges the sufficiency of the evidence to support DALA's determination that the department's decision to impose a one-year suspension, rather than a monetary penalty, was appropriate. This factual question turns on the department's findings regarding whether disqualification would result in inadequate participant access to WIC vendors. See 7 C.F.R. § 246.12(l)(1)(ix), (l)(8). On the basis of the record before us, and the limited arguments made on appeal, we conclude that this contention is without merit.[19]

*Conclusion.* The portion of the judgment affirming the termination of Ramzi's vendor agreement and disqualification as a WIC vendor for a three-year period is reversed and remanded to the Superior Court with instructions to remand the matter to DALA for further consideration consistent with this opinion. The remaining portion of the judgment is affirmed.

*So ordered.*

---

[19]Ramzi has not provided this court with the transcript of the administrative hearing. The claim therefore "should not be entertained." *Covell* v. *Department of Social Servs.*, 439 Mass. 766, 783 (2003). See generally Standing Order 1-96(2) of the Superior Court, Mass. Ann. Laws Court Rules, at 1118 (LexisNexis 2013-2014) (setting forth procedure for ordering transcript in cases seeking judicial review of administrative agency proceedings). Moreover, the department maintains that the decision is a discretionary one, and that Federal regulations bar review of the "validity or appropriateness of the State agency's . . . participant access determinations." 7 C.F.R. § 246.18(a)(iii)(C). Other than the regulatory citation, the department has not briefed its assertion that the regulation creates a jurisdictional bar. Likewise, Ramzi has not briefed or argued the jurisdictional issue. We decline to address this issue in the absence of further adversarial definition, and do not reach the question in view of the fact that the argument is otherwise precluded.