ANKETELL vs. OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION, 101 Mass. App. Ct. 628

 
 DAMIAN ANKETELL & another [Note 1] vs. OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION.

101 Mass. App. Ct. 628
 May 5, 2022 - September 9, 2022

Court Below: Superior Court, Essex County
Present: Rubin, Henry, & Grant, JJ.

 

No. 21-P-263.

Consumer Protection. Consumer Protection Act, Unfair or deceptive act. Home Improvement Contractors. Contract, Misrepresentation, Construction contract, Performance and breach. Bankruptcy.

A hearing officer in the Office of Consumer Affairs and Business Regulation properly concluded that the plaintiff home improvement contractor had violated the Home Improvement Contractors Act, G. L. c. 142A, where the plaintiff's failure to disclose to the homeowners that he deposited their payments into his businesses' general fund (rather than using the funds to pay subcontractors on the homeowners' project) was a material misrepresentation within the meaning of G. L. c. 142A, § 17 (4), in that the payment schedule set forth in the contract was an implicit representation that the plaintiff would use the payments to supply labor and materials for the homeowners' particular job, and had the homeowners known that the plaintiff would instead use their payments to subsidize his other businesses, they would not have entered into the contract [634-637]; and where the plaintiff had abandoned the project without justification in violation of G. L. c. 142A, § 17 (2), which did not require proof of an intent to abandon [637-638].

Civil action commenced in the Superior Court Department on September 25, 2018. 

 The case was heard by James F. Lang, J., on motions for judgment on the pleadings. 

John J. Regan for the plaintiffs.

Michael A. Lafleur, Assistant Attorney General, for the defendent.

 GRANT, J. In this case we construe the Home Improvement Contractors Act, G. L. c. 142A, pursuant to which the Office of Consumer Affairs and Business Regulation (OCABR) imposed administrative sanctions on a home improvement contractor. We conclude that the hearing officer properly determined that the contractor's failure to inform the homeowners that their payments 

 Page 629 

would be used to fund his own real estate development business amounted to a material misrepresentation within the meaning of G. L. c. 142A, § 17 (4), and that the contractor abandoned the homeowners' project in violation of G. L. c. 142A, § 17 (2).

 The plaintiffs, Damian Anketell and his construction company, Ground Up Construction, Inc. (Ground Up), appeal from a Superior Court judgment upholding, on judicial review under G. L. c. 30A, § 14, a decision by the OCABR. [Note 2] In that decision, the OCABR's hearing officer (hearing officer) found that Anketell had violated G. L. c. 142A, § 17, by making a material misrepresentation to the homeowners and by abandoning their home improvement project. Anketell argues that the hearing officer erred as a matter of law in construing the term "material misrepresentation" in G. L. c. 142A, § 17 (4), to encompass his failure to disclose to the homeowners that he deposited the funds they paid him to a general fund used for Anketell's businesses rather than using those funds to pay subcontractors on the homeowners' project. Anketell further argues that the hearing officer erred by construing the term "abandoning" in G. L. c. 142A, § 17 (2), without a specific intent requirement. We affirm the judgment. 

 Background. The following facts are drawn from the decision of the hearing officer and the documentary exhibits. [Note 3] The homeowners signed a $111,293 contract for Anketell and Ground Up to remodel the attic of their home, which included constructing an office, bedroom, bathroom, and play area, in addition to replacing the roof and building a staircase. The contract, which was signed by Anketell on August 31, 2014, and by the homeowners on October 13, 2014, required the homeowners to pay Anketell in four installments: (1) a $38,952 deposit; (2) $27,823 on the first 

 Page 630 

day of demolition; (3) $27,823 on completion of rough construction and framing; and (4) a final payment of $16,695 on completion of the project. The contract did not specify that Anketell would allocate the homeowners' funds exclusively for use on their project. Anketell did not tell the homeowners that he had a second business, Castle Hill Properties, LLC (Castle Hill), through which he bought, renovated, and sold properties for profit, colloquially referred to as "flipping" properties. Nor did Anketell tell the homeowners that it was his practice to place their payments in a general fund that he also used to fund Castle Hill's projects.

 On October 17, 2014, the homeowners paid Anketell the first installment. By March 18, 2015, the day Anketell began demolition, the homeowners had made a partial payment of $21,500 toward the second installment, in several checks. The homeowners paid Anketell one of those checks in the amount of $7,500, and the next day a $7,000 check that Anketell made out to a subcontractor on the homeowners' project was returned for insufficient funds. On March 20, 2015, the homeowners paid an additional $6,232 toward the second installment. [Note 4] Despite these payments, Ground Up's checking account had a negative balance. 

 Before the third installment was due, Anketell requested that the homeowners make an advance payment of $11,130 toward the rough construction and framing, and they did so on March 25, 2015. As of March 31, 2015, Ground Up's account had a balance of only $170. That day, Anketell told the homeowners that he was having liquidity problems and asked them to make another advance payment; they refused. Also on that day, the subcontractors stopped working because Anketell was not paying them. By that point, the homeowners had paid Anketell $77,814 of the contract price, but he and Ground Up had completed only about twenty to twenty-five percent of the project: the framing was incomplete, the roof had been removed and the exposed areas were covered in places only by a tarpaulin, and the heating and air conditioning system had been disconnected. 

 On April 3, 2015, at the request of a subcontractor, the homeowners met with the subcontractor and Anketell. The subcontractor told the homeowners that he and the other subcontractors were not being paid and that much of the money that the homeowners 

 Page 631 

had paid toward the contract had been diverted to Anketell personally. That subcontractor had reviewed Ground Up's bank statements and learned that the homeowners' payments had been depleted from the account by cash withdrawals and checks payable to "cash" or to Anketell personally, with no explanation from Anketell where the funds had gone. Although Anketell promised the homeowners that he would be able to recapitalize and complete the project in a short amount of time, they had lost faith in him. 

 Within days after that meeting, the homeowners stopped credit card payments totaling $17,362 that they had made toward the second and third installments due under the contract. The homeowners filed a verified complaint in the Superior Court against Anketell, Ground Up, and Castle Hill, alleging claims including breach of contract, fraud in the inducement, material misrepresentation in violation of G. L. c. 142A, § 17 (4), and abandonment in violation of G. L. c. 142A, § 17 (2). Two days later, Anketell and Ground Up filed for bankruptcy. The homeowners pursued their claims in bankruptcy court, where a judge ruled the debts nondischargeable pursuant to 11 U.S.C. § 523(a)(2). [Note 5]

 The homeowners also filed a complaint with the OCABR. In April 2018, after resolution of the bankruptcy matter, the OCABR held an administrative hearing at which Anketell and the homeowners testified and exhibits including Ground Up's financial records were admitted in evidence. The hearing officer issued a written decision concluding that because the contract clearly set forth a payment schedule with installments due at certain stages of the project, Anketell's failure to tell the homeowners that he would deposit their payments to his businesses' general fund was a material misrepresentation. The hearing officer further concluded that Anketell had abandoned the project without justification. Crediting the testimony of the homeowners and discrediting portions of Anketell's testimony, the hearing officer found that Anketell's financial issues were caused by his own mismanagement of Ground Up's funds, including his use of those funds for Castle Hill's projects. From evidence that included Anketell's testimony, the hearing officer found that before construction began, Anketell spent over $50,000 of the homeowners' funds, 

 Page 632 

including by diverting money to Castle Hill. Pursuant to the OCABR's authority under G. L. c. 142A, § 18, the hearing officer imposed a $4,700 administrative penalty on Anketell and suspended his home improvement contractor certificate of registration for ten months. Anketell filed a motion for reconsideration, arguing that his "[m]ere nondisclosure" of the fact that he had deposited the homeowners' payments to his businesses' general fund could not amount to a "material misrepresentation" within the meaning of G. L. c. 142A, § 17 (4). The hearing officer denied the motion, noting that Anketell's argument either failed to address the facts here or misapprehended the degree to which G. L. c. 142A protects homeowners analogously to the consumer protection statute, G. L. c. 93A. 

 Anketell then filed a complaint in the Superior Court pursuant to G. L. c. 30A, § 14, for judicial review of the OCABR's decision. The parties filed cross motions for judgment on the pleadings. The judge allowed the OCABR's motion, and judgment entered dismissing the complaint. This appeal followed. 

 Discussion. 1. Standard of review. "Under G. L. c. 30A, § 14 (7), [w]e shall uphold an agency's decision unless it is based on an error of law, unsupported by substantial evidence, unwarranted by facts found on the record as submitted, arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law" (quotation and citation omitted). Crossing Over, Inc. v. Fitchburg, 98 Mass. App. Ct. 822, 827 (2020). Although we interpret statutes de novo, we give "substantial deference" to the OCABR's interpretation of the statute it is charged with administering (citation omitted). [Note 6] Mendes's Case, 486 Mass. 139, 143 (2020). See Sullivan v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 97 Mass. App. Ct. 818, 821 & n.7 (2020). 

 To the extent that Anketell may be contesting the sufficiency of the evidence to support the hearing officer's factual findings, we are unable to assess that claim because Anketell has not provided us with a transcript of the administrative hearing. See note 3, supra. Beyond that, "[w]e do not make a de novo determination of the facts or draw different inferences from the facts found by the agency" (citation omitted). Franklin Office Park Realty Corp. 

 Page 633 

v. Commissioner of the Dep't of Envtl. Protection, 466 Mass. 454, 456-457 (2013). 

 However, to the extent that Anketell is contesting the hearing officer's legal conclusions that Anketell's failure to inform the homeowners that their payments would be deposited to his businesses' general fund amounted to a material misrepresentation within the meaning of G. L. c. 142A, § 17 (4), and that his failure to complete construction amounted to abandonment of the project within the meaning of § 17 (2), those are mixed questions of fact and law, and so in considering them we give due weight to the OCABR's expertise. See Veolia Energy Boston, Inc. v. Assessors of Boston, 483 Mass. 108, 112 (2019). See also Mendes's Case, 486 Mass. at 144. "We can . . . assess the logic of the analysis that the hearing officer articulated in her decision, but not the evidence itself, which may have included detail and nuance that was not expressly referenced in the hearing officer's written decision" (citation omitted). Covell v. Department of Social Servs., 439 Mass. 766, 782 (2003). See Connolly v. Suffolk County Sheriff's Dep't, 62 Mass. App. Ct. 187, 193 (2004). 

 General Laws c. 142A is a consumer protection statute that requires home improvement contractors to register with the OCABR and regulates their services, including by requiring that their contracts contain a schedule of payments. See G. L. c. 142A, § 2 (a) (6) (requiring that contract include "time schedule of payments to be made under said contract and the amount of each payment stated in dollars," of which any advance payment prior to start of work cannot exceed one-third of total contract price); G. L. c. 142A, § 10. See also Reddish v. Bowen, 66 Mass. App. Ct. 621, 626 (2006). Section 17 prohibits contractors from doing certain acts, of which two are at issue here: "making a material misrepresentation in the procurement of a contract," § 17 (4), and abandoning a contract "without justification," § 17 (2). When a contractor has violated the statute, remedies available to a homeowner include not only a civil action brought in the District or Superior Court or arbitration, see § 3 (a)-(b), but also the opportunity to seek relief from the OCABR, see §§ 18-19. See also 201 Code Mass. Regs. § 18.03 (2010). 

 In response to a homeowner's complaint about a contractor, the OCABR may pursue the matter in either of two ways. As it did here, the OCABR may seek administrative sanctions pursuant to G. L. c. 142A, § 18, which may include fines of $2,000 per violation and the suspension or revocation of the contractor's 

 Page 634 

license. "In determining whether to impose an administrative penalty, the [OCABR] shall consider the seriousness of the violation, the deleterious effect of the violation on the complainant, any good faith on the part of the contractor . . . , and the contractor's . . . history of previous violations." [Note 7] G. L. c. 142A, § 18. Alternatively, if the contractor violated the statute "knowingly and willfully," the OCABR may refer the case to the Attorney General's office for possible criminal prosecution pursuant to § 19, punishable by up to one year imprisonment and up to a $2,000 fine. This court has held that "[t]he legislative scheme -- providing strict liability for administrative sanctions . . . while in contrast requiring scienter for criminal prosecution -- is set forth unambiguously." Commonwealth v. Brien, 67 Mass. App. Ct. 309, 313 (2006). 

 2. Material misrepresentation. Anketell argues that the hearing officer erred in concluding that his failure to disclose to the homeowners that he deposited their payments into his businesses' general fund was a material misrepresentation within the meaning of G. L. c. 142A, § 17 (4). Anketell also argues that the hearing officer erred by construing the term "material misrepresentation" in G. L. c. 142A, § 17 (4), by analogizing to G. L. c. 93A. We disagree. 

 Under G. L. c. 142A, § 17 (4), a contractor is prohibited from "making any material misrepresentation in the procurement of a contract or making any false promise of a character likely to influence, persuade or induce the procurement of a contract." Thus, the intent required by the plain language of the statute is that the material misrepresentation be likely to influence, persuade, or induce the homeowners to enter the contract. As noted above, § 18 imposes "strict liability for administrative sanctions." Brien, 67 Mass. App. Ct. at 313. 

 The hearing officer concluded that Anketell made a material misrepresentation within the meaning of G. L. c. 142A, § 17 (4). The hearing officer noted that the purpose of the payment schedule in the contract, as required by G. L. c. 142A, § 2 (a) (6), was "to make transparent the use of the homeowners' funds for their project, and prevent misuse of such funds." We conclude that the hearing officer could determine that the payment schedule in the contract, seen in light of Anketell's failure to tell the homeowners 

 Page 635 

that their payments would be deposited into his general fund also used for his own real estate development business, Castle Hill, amounted to a material misrepresentation within the meaning of G. L. c. 142A, § 17 (4). [Note 8] The payment schedule was an implicit representation that Anketell and Ground Up would use the homeowners' payments to supply the labor and materials for the job (or, since money is fungible, that they had sufficient cash flow from other sources to do so). Based on evidence including Anketell's failure to tell the homeowners that their payments would subsidize Castle Hill, the hearing officer could infer that at the time Anketell signed the contract on August 31, 2014, the payment schedule was a material misrepresentation. The hearing officer could conclude that, had the homeowners known that Anketell would use their payments to finance his own real estate development projects through Castle Hill, they would not have entered into the contract. [Note 9] 

 Anketell points to a statement in the hearing officer's decision that "the [c]ontractor's failure to inform [h]omeowners of the 'general fund' is a material misrepresentation. Such omission, in conjunction with the [c]ontract's terms regarding the payment schedule, led [h]omeowners to believe that their payments were going towards portions of work for their project, not other expenses." Anketell argues that this cannot be a material misrepresentation because it was an omission, not a representation. The hearing officer explained in her decision on the motion to reconsider that Anketell's claim that he merely omitted material information misapprehended the reality of the situation and the protections that G. L. c. 142A provides to homeowners. An omission can be a misrepresentation. Indeed, "[a] duty exists under c. 93A to disclose material facts known to a party at the time of a transaction." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 323 (2018), cert. denied, 139 S. Ct. 794 (2019), quoting Underwood v. Risman, 414 Mass. 96, 99-100 (1993). The hearing officer's decision, like our decision, rests on an inference from the 

 Page 636 

payment schedule that Anketell and Ground Up would have the funds necessary to perform the work at each stage of the contract that corresponded to each payment due. Because Anketell did not inform the homeowners that their payments would be used to subsidize Castle Hill, the payment schedule in the contract amounted to an affirmative misrepresentation. 

 Contrary to Anketell's argument, we do not read the hearing officer's decision as interpreting the statute to mean that a contractor must inform clients into which bank account their payments were deposited, that a contractor may not use one bank account for all projects, or that a contractor necessarily must earmark clients' payments specifically toward the costs of their project. [Note 10] In addition, Anketell's failure to tell the homeowners that he would deposit their payments to his businesses' general fund used to subsidize Castle Hill makes this case quite different from one in which a contractor merely intends at the time of the contract to perform services and later is unable to do so. Anketell ran out of funds to perform the homeowners' work because he mismanaged Ground Up's funds, including by diverting them to Castle Hill. 

 Anketell argues that the hearing officer could not subject him to administrative sanctions absent proof that he made the material misrepresentation knowingly and willfully. But that is the standard that would apply if Anketell had been criminally prosecuted pursuant to G. L. c. 142A, § 19. The hearing officer properly imposed strict liability for administrative sanctions pursuant to G. L. c. 142A, § 17. See Brien, 67 Mass. App. Ct. at 313. 

 Anketell further argues that because not every unfair or deceptive trade practice as defined in G. L. c. 93A, § 2 (a), amounts to a violation of G. L. c. 142A, the statute at issue here, the hearing officer should not have looked to cases construing G. L. c. 93A, including Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975), in assessing whether the payment schedule amounted to a material misrepresentation. The argument misses the mark, 

 Page 637 

because the converse is true. General Laws c. 142A, § 17, provides that a violation of G. L. c. 142A is a per se violation of G. L. c. 93A. This court has recognized that G. L. c. 142A "reflects an intention to facilitate a homeowner's c. 93A remedies." Simas v. House of Cabinets, Inc., 53 Mass. App. Ct. 131, 137 (2001). See Styller v. National Fire & Marine Ins. Co., 95 Mass. App. Ct. 538, 540 (2019) (violation of G. L. c. 142A amounted to unfair or deceptive practice under G. L. c. 93A); Reddish, 66 Mass. App. Ct. at 626-627 (same). The hearing officer did not err in construing G. L. c. 142A by looking to the consumer protection statute, G. L. c. 93A. 

 3. Abandonment. Anketell also argues that the hearing officer erred in finding that he abandoned the project. He contends that G. L. c. 142A, § 17 (2), requires proof of his intent to abandon, but there was no such evidence here. [Note 11] On this record, Anketell has not shown that the hearing officer made any error of law or abused her discretion. [Note 12]

 Under G. L. c. 142A, § 17 (2), a contractor is prohibited from "abandoning or failing to perform, without justification, any contract or project engaged in or undertaken by a registered contractor or subcontractor." G. L. c. 142A, § 17 (2). Thus, according to the plain language of the statute, the issue is not whether Anketell intended to abandon the project, but rather whether he did so without justification. Section 17 (2) does not require proof of a contractor's intent to abandon, but rather provides "strict liability for administrative sanctions." Brien, 67 Mass. App. Ct. at 313. 

 After hearing testimony from Anketell and the homeowners, the hearing officer found that Anketell abandoned the project without justification. Anketell mismanaged funds paid by the 

 Page 638 

homeowners so that he did not have enough money to finish the project, failed to pay subcontractors, and then stopped work. He argues that the homeowners' unwillingness to pay him more money and give him more time is what ended the project. But Anketell's inability to complete the project under the terms of the contract amounted to abandonment. It should go without saying that homeowners do not have to throw good money after bad, or show forbearance to a contractor who cannot meet the terms of his agreement. Proof of Anketell's intent to abandon the project was not required.

Judgment affirmed.

FOOTNOTES
[Note 1] Ground Up Construction, Inc. 

[Note 2] Because Ground up was dissolved before the issuance of the OCABR's decision, the hearing officer deemed Anketell individually to be the sole contractor. Ground up was named as a plaintiff in the complaint for judicial review and in the judgment, and is named as a party in the notice of appeal. 

 Because Anketell was the sole proprietor and operator of Ground Up, our references to Anketell include Ground Up unless otherwise noted.

[Note 3] Although Anketell argued in the Superior Court that the hearing officer's decision was not supported by substantial evidence, was arbitrary or capricious, or was an abuse of discretion, he did not provide that court with a transcript of the administrative hearing, as required by Superior Court Standing Order 1-96. Nor has he provided this court with a transcript of the administrative hearing. See Mass. R. A. P. 8 (b) (1) (A), as appearing in 481 Mass. 1611 (2019). As a result, our review is necessarily limited, as constrained by the partial record before us. See Ramzi, Inc. v. Department of Pub. Health, 85 Mass. App. Ct. 353, 362 n.19 (2014). 

[Note 4] It appears that the homeowners' payments toward the second installment totaled ninety-one dollars less than the amount listed in the contract. The discrepancy has no bearing on the outcome of this case. 

[Note 5] The bankruptcy court judge concluded that the grounds for nondischargeability included fraud and misrepresentation, but in doing so found facts that differ from those facts found by the hearing officer. In reaching our decision, we rely only on the factual findings of the hearing officer. 

[Note 6] The Superior Court judge was subject to the same standard of review. To the extent that Anketell argues that, in granting deference to the OCABR's interpretation of G. L. c. 142A, the judge failed to undertake a proper de novo review of the statute at issue, we disagree. See Sullivan v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 97 Mass. App. Ct. 818, 821 n.7 (2020). 

[Note 7] Anketell does not argue that administrative sanctions should not have been imposed for any of those reasons. Accordingly, we do not consider those issues. 

[Note 8] The OCABR does not argue that Anketell made a "false promise" within the meaning of § 17 (4), and so we do not reach that issue. 

[Note 9] Absent a transcript of the hearing, we cannot discern the degree to which subsequent events -- including Anketell's repeated depletion of Ground Up's account after payments from the homeowners, his failure to pay the subcontractors, and his asking the homeowners for advance payments on the contract -- evidenced his intent to make a material misrepresentation at the time of the procurement of the contract. Thus we do not consider those issues. See Covell, 439 Mass. at 782. 

[Note 10] In some circumstances, a contractor who is concerned that a homeowner may not make payments due on the contract may require the homeowner to pay the balance due on the contract, which may be held in escrow. See G. L. c. 142A, § 2 ("[W]here the contractor deems himself to be insecure he may require as a prerequisite to continuing said work that the balance of funds due under the contract, which are in the possession of the owner, shall be placed in a joint escrow account requiring the signature of the contractor and owner for withdrawal"). That did not occur here. 

[Note 11] The OCABR argues that we should not consider this claim, as Anketell did not raise it below. See She Enters., Inc. v. State Bldg. Code Appeals Bd., 20 Mass. App. Ct. 271, 273-274 (1985). It appears from the record before us that Anketell did not raise this precise claim before either the OCABR or the Superior Court judge, and because he did not provide a transcript of the administrative hearing, see note 3, supra, we cannot second-guess the hearing officer's finding of fact that Anketell abandoned the project without justification. In any event, the claim is meritless. 

[Note 12] At oral argument, Anketell argued that he had not abandoned the project, because the homeowners committed a breach of the contract by not making the installment payments on the schedule set forth in it. We do not disturb the hearing officer's findings of fact on this issue, particularly absent a transcript of the hearing. See Ramzi, Inc., 85 Mass. App. Ct. at 362 n.19. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.